800 A.2d 237 (2002)
352 N.J. Super. 420
ARCHWAY PROGRAMS, INC., Plaintiff-Appellant,
v.
PEMBERTON TOWNSHIP BOARD OF EDUCATION, Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Argued November 13, 2001.
Decided June 28, 2002.
*239 Steven D. Weinstein, Cherry Hill, argued the cause for appellant (Blank Rome Comisky & McCauley, attorneys; Mr. Weinstein, on the brief).
Frederick W. Hardt, Moorestown, argued the cause for respondent (Mr. Hardt, with Pamela A. McCoy, on the brief).
Before Judges PETRELLA,[*] KESTIN and ALLEY.
*238 The opinion of the court was delivered by KESTIN, J.A.D.
Plaintiff, Archway Programs, Inc. (Archway), seeks recovery under a contract or, alternatively, on theories of unjust enrichment or quantum meruit. The amount alleged in the complaint to be due is $95,795.72 for the rendition of educational services to defendant, Pemberton Township Board of Education (Board), during the 1999-2000 contract year. The Board counterclaims, also in three counts, for judgment against Archway in an amount to be determined, representing alleged overcharges from Archway to the Board in prior contract years. In a certification filed in the trial court, the Board's Assistant Superintendent for Business Affairs alleged that sums due Archway for its services in past years "are less than amounts due for overpayments made to Archway. After giving credit for all sums due for tuition, Archway still owes the District approximately $20,000."
The Board also raises several affirmative defenses including that primary jurisdiction over Archway's claim resides with the Department of Education (Department), that Archway had failed to exhaust its administrative remedies with the Commissioner of Education (Commissioner), and that Archway's claim was barred by application of the "doctrines of actual or equitable fraud."
*240 Archway moved for dismissal of the counterclaim, to strike the aforementioned affirmative defenses, and for summary judgment on its claim. The trial court denied the motions. Archway appeals from that denial and the trial court's denial of its motion for reconsideration.
We granted Archway's motion for leave to appeal, specifically directing the parties to address the issue whether the entire Law Division matter should be transferred to the Department. Archway argues on appeal that the trial court lacks jurisdiction over the counterclaim and, alternatively, even if jurisdiction exists, the counterclaim should be dismissed; and that neither the complaint nor the counterclaim should be transferred to the Department. The Board continues to assert its right to set-off or recoupment and to advance the concepts of primary jurisdiction and exhaustion of remedies in arguing that the entire matter should be entrusted to the Commissioner for decision and to the Department for resolution before the trial court addresses the purely legal issues that may remain.
We begin by noting our institutional respect for the Department's subject matter interest and for the Commissioner's first-instance jurisdiction "to hear and determine ... all controversies and disputes arising under the school laws[.]" N.J.S.A. 18A:6-9. The Commissioner's authority is plenary. See Abbott v. Burke (I), 100 N.J. 269, 301, 495 A.2d 376 (1985). Manifestly, however, the sweep of the Department's interest and the Commissioner's jurisdiction does not extend to all matters involving boards of education. For example, contract claims against boards do not arise under the school laws but rather from statutory or common law. See Picogna v. Board of Educ. of Cherry Hill, 249 N.J.Super. 332, 335, 592 A.2d 570 (App. Div.1991). Claims of the latter type are, therefore, typically and appropriately adjudicated in the courts. See ibid.; South Orange-Maplewood Educ. Ass'n v. Board of Educ. of South Orange & Maplewood, 146 N.J.Super. 457, 463, 370 A.2d 47 (App. Div.1977).
This is not to say that courts must apply their jurisdictional authority to resolve all contract claims before cognate issues pending on the administrative level are resolved. The concept of primary jurisdiction suggests otherwise. Where one aspect of a single, integrated dispute is pending before an administrative agency and another aspect of the same dispute is pending before a court, logic commends that the entire matter be dealt with, at least initially, by the entity with plenary authority over the subject matter field involved.
The doctrine of primary jurisdiction, like that requiring exhaustion of administrative remedies, promotes proper relationships between courts and regulatory agencies. * * *
Under the doctrine of primary jurisdiction, when enforcement of a claim requires resolution of an issue within the special competence of an administrative agency, a court may defer to a decision of that agency.
[Campione v. Adamar of New Jersey, Inc., 155 N.J. 245, 263, 714 A.2d 299 (1998) (citations omitted).]
See also, e.g., Muise v. GPU, Inc., 332 N.J.Super. 140, 160, 753 A.2d 116 (App. Div.2000) (holding that a court should exercise its discretion to defer to the primary jurisdiction of an agency where failure to do so "would be inconsistent with the `statutory scheme'" conferring regulatory authority on the agency). Thus, it may be appropriate, in order to avoid piecemeal adjudication or duplicative, anomalous or contradictory results, for a court to defer *241 in its jurisdictional exercise, even if only temporarily, while the administrative agency with the primary interest sorts out the issues and the claims. See, e.g., Boldt v. Correspondence Mgmt. Inc., 320 N.J.Super. 74, 83-85, 726 A.2d 975 (App.Div. 1999); Village of Ridgefield Park v. New York, Susquehanna & W. Ry. Corp., 318 N.J.Super. 385, 405-07, 724 A.2d 267 (App. Div.1999), modified and remanded on other grounds, 163 N.J. 446, 750 A.2d 57 (2000). Concomitantly, if resolution of the action at law is the key element to resolving the entire dispute, the administrative agency may defer its consideration until the lawsuit is resolved. See New Jersey Div., Horsemen's Benevolent Protective Ass'n v. New Jersey Racing Comm'n, 251 N.J.Super. 589, 603-04, 598 A.2d 1243 (App.Div.1991); cf. Lemelledo v. Beneficial Mgmt. Corp., 150 N.J. 255, 273-75, 696 A.2d 546 (1997); Hinfey v. Matawan Reg'l Bd. of Educ., 77 N.J. 514, 531-32, 391 A.2d 899 (1978).
The basic proposition that no administrative officer or agency, absent a specific grant of legislative authority, is empowered to decide questions of law, such as those arising in contract actions, applies to the Commissioner of Education even in the context of his plenary authority to decide controversies and disputes arising under the school laws. The Commissioner's authority is not exclusive where particular statutes provide alternate routes for issue resolution, see Roxbury Twp. Bd. of Educ. v. West Milford Bd. of Educ., 283 N.J.Super. 505, 519-21, 662 A.2d 976 (App. Div.1995), certif. denied, 143 N.J. 325, 670 A.2d 1066 (1996), or where the matter involves a question of law outside the purview of the school laws. Id. at 520, 662 A.2d 976. Nevertheless, in appropriate instances where legal relief is sought while a closely related administrative proceeding pends in the Department, a trial court should normally stay its hand, even while retaining jurisdiction where appropriate, out of deference for the primary subject matter jurisdiction of the Commissioner and the Department, unless a reflective evaluation of the issues and their relationship to each other suggests that another sequence for resolving the pending questions would be more realistic.
In order to promote a full understanding of our sense of the relationship between the issues pending on the two levels in this matter, an analysis of the background facts is required. In this regard, we depend to a great extent upon the certifications of counsel and supporting papers in the otherwise sparse record on appeal. For the limited purpose of reviewing the trial court's threshold dispositions, we take as true the factual depictions contained in the parties' trial court motion papers as presented in the appendices on appeal.
Under State law, the Board is required to provide a "thorough and efficient" education to all school-aged children who reside within the Township of Pemberton. See N.J. Const. art. VIII, § 4, ¶ 1; Abbott v. Burke (II), 119 N.J. 287, 575 A.2d 359 (1990). In discharging its responsibilities, the Board must comply with federal law including the Education of the Handicapped Act (Individuals with Disabilities Education Act), 20 U.S.C.A. §§ 1400 to 1487, under which the Board must identify children with special needs and develop individualized education programs for them. See 20 U.S.C.A. § 1414(d). The Board has elected to send its students with disabilities to approved educational facilities specializing in the education of special needs children rather than to develop its own programs adequate to satisfy statutory standards.
Archway is a privately run, not-for-profit entity which operates a school for individuals with special needs. Among its *242 other functions, it is authorized by the Department, pursuant to N.J.A.C. 6A:14-7.1 to -7.10, to provide educational services to public school students with disabilities. The tuition received from sending school districts is a major source of Archway's income. Pemberton is one of number of public school districts that have contracted with Archway to satisfy their legal obligations to students entitled to special needs education.
The services provided by Archway to Pemberton and other school districts are subject to comprehensive regulatory guidelines established by the Department. For example, N.J.A.C. 6A:14-7.8 requires a school district's board of education to enter into a written contract with the provider of special education programs before the provider may furnish educational services to disabled students from that district. The regulatory provisions also mandate the minimum content of the contract. The Department retains monitoring and oversight authority in respect of Archway and other providers of similar services, see N.J.A.C. 6A:14-7.10, and performs periodic audits to ensure that the tuition rates charged to public schools for these services are within prescribed limits.
The record before us discloses that, in September 1995, the Department began an audit of Archway's financial records for fiscal year 1994-1995. The results were presented to Archway in November 1998. In that audit, the Department found that Archway had overcharged in providing services to approximately eighty public school districts during the 1994-95 year, including Pemberton. The report stated that Archway was obligated to reimburse the school districts a total of approximately $2.5 million on a pro-rata basis based on the percentage of tuition received from each district. By letter dated November 9, 1998, the Department informed Archway that its approval to accept new students was immediately revoked, and that effective June 30, 1999, the revocation would extend to Archway's authorization to continue serving students currently enrolled. Shortly thereafter, the Department staff requested the Commissioner, on an emergent basis, to appoint a fiscal monitor to oversee Archway.
Archway appealed to the Commissioner, seeking a review of the audit results and an interpretation of regulations dealing with the manner in which certain Archway expenses should be allocated to its tuition charges to school districts. In an emergent application, Archway sought a stay of the Department's decision to revoke its approval to accept new students, and it opposed the appointment of a fiscal monitor. Employing established contested case procedures, see N.J.S.A. 52:14B-9, -10; N.J.A.C. 1:1-1.1 to -20.3, the Commissioner referred the matter to the Office of Administrative Law (OAL). On December 28, 1998, Administrative Law Judge Metzger rendered an initial decision on the order to show cause and the application for emergent relief. He determined that the Department's June 30, 1999 license revocation should be stayed and that the application for appointment of a fiscal monitor should be denied. That determination was forwarded to the Commissioner for final decision. See N.J.S.A. 52:14B-10c.
In mid-February 1999, Archway and the Department entered into an interim settlement agreement and an OAL consent order reciting the parties' "agree[ment] that the application for emergent relief filed by Archway ... and the [Department's] cross-petition for review of conditional approval status and revocation are hereby dismissed, without prejudice." The terms of the agreement provided for administrative handling and resolution of all the outstanding *243 issues between Archway and the Department.
Shortly thereafter, on February 25, 1999, a Department memorandum was addressed to chief school administrators, school business administrators, and directors of special education reporting the agreement and advising, by way of a "status report", inter alia:
3. Archway has submitted a list of actions taken to ensure compliance with the fiscal monitoring report and a team of monitors visited the school to confirm those actions.
4. Archway has scheduled a meeting with the Office of Compliance to appeal findings identified in the fiscal monitoring report. A final determination on any monies to be refunded to districts has not yet been made.
5. Effective February 22, 1999, Archway Programs was permitted to accept new students into its schools.
6. Districts currently sending students to Archway are advised to pay their tuition on a timely basis. It is not appropriate to withhold funds from Archway based on monies that may or may not be owed the district.
7. The Department will not pursue closing of the school in June 1999 as previously reported.
Despite ongoing negotiations between the parties to the OAL consent order, the issue of tuition overpayment has apparently been unresolved and, after a series of administrative proceedings and orders, remains with the Department for resolution. Further matters related to a subsequent audit of Archway and other performance questions also pend while those parties seek a "global settlement" of all issues between them.
The foregoing notwithstanding, Archway has continued, with Department approval, to provide its services to a number of districts, including Pemberton, and to bill for tuition. The 1999-2000 tuition obligation upon which Archway's claim in this case is premised arose on September 7, 1999, when Archway and the Board entered into a written contract under which Archway would provide educational services to Pemberton students with special needs for that school year at a tuition rate established under N.J.A.C. 6:20-4.1 to -4.7. Those regulations, in force at the time but since superseded by N.J.A.C. 6:23, provided for a tentative or interim tuition rate to be charged, subject to adjustment based on the Department's year-end audit to be performed in conformity with N.J.A.C. 6:20-4.8. Under the contract and pursuant to N.J.A.C. 6:20-4.1(e)3, the Board was obligated to make payments no later than sixty days after the receipt of the monthly tuition bills for services provided by Archway.
Archway claims that, notwithstanding the express contractual undertaking, and contrary to the regulation and the directive in item six of the Department's February 25, 1999 memorandum, the Board refuses to pay tuition bills for services provided during the months of December 1999, and May and June 2000. Archway contends further that the Board does not dispute the amount of those bills. For its part, the Board, inter alia, "admits that some sums for past years are due" but, as we have noted, it asserts that these amounts "are less than amounts due back for overpayments made to Archway. After giving credit for all sums due for tuition, Archway still owes the [Board] approximately $20,000."
Manifestly, plaintiff's claim in this action, based on a contract, is within the purview of the courts to decide. Nevertheless because it bears upon a larger controversy still pending on the administrative *244 level, and because it is less than clear whether item six in the Department's February 25, 1999 memorandum is a directive or merely guidance to local school boards in their dealings with Archway regarding the effectuation of obligations owed by Archway arising from overcharges in prior years, the trial court should stay its consideration of the matter pending resolution of the underlying administrative issues. One of the basic legal questions before the trial court, the validity of the Board's assertion of a right to set-off in the amount of past overcharges, cannot be fruitfully addressed, in a way that makes sense practically, in advance of resolution by the Commissioner and the Department of the issues pending before them. Certainly, the Commissioner and the Department possess ample jurisdictional and practical authority over both of the parties to require each to discharge its obligations owing to the other. All issues between the parties should be placed before the Commissioner and the Department so that the latter authorities are not hampered in their responsibilities to administer the subject matter area comprehensively.
This is not to say that the trial court may cede its contract-claim jurisdiction to the Commissioner or the Department for decision. Cf. Hackensack v. Winner, 82 N.J. 1, 28-29, 410 A.2d 1146 (1980). Neither Archway's contractual rights nor the Board's legal rights to set-off or other relief based upon its claim of legal or equitable fraud may be decided on the administrative level. Nevertheless, out of respect for the subject matter interest of a coordinate branch of government and to promote consistency of result, the trial court should stay its hand regarding all interrelated issues of law between the parties until the Commissioner and the Department have resolved all those questions that are within their subject matter purview and amenable to disposition by administrative order or directive. For example, the amount of Archway's overcharge has yet to be confirmed by the Department. Also, Archway's right, if any, to withhold its services from defendant's students while its current billings remain unpaid, may be a question to be determined. These issues are not within the trial court's authority to decide. Even the "tuition due" question requires the Commissioner's expertise to determine because it necessarily implicates the applicability of and conformity with complex regulations governing the subject matter.
It may well be, once the Commissioner and the Department have decided all the issues within their purview, there will, as a practical matter, be no factual issues left for the trial court to decide. If such be the case, the court might well dismiss the civil action as moot. Or, the circumstances may suggest that the trial court should enter judgment embodying whatever terms might be necessary to give legal, civil-action-claim effect to the determinations made on the administrative level, in much the same way the courts are generally available, through the summary actions framework, to give needed legal effect to administrative determinations. See R. 4:67-6. On yet another hand, it is possible that once the Commissioner and the Department have resolved all the issues properly before them, questions of law between the parties, not amenable to practical administrative resolution, will remain to be determined by the trial court. By way of possible example, notwithstanding the Commissioner's plenary authority over the parties to resolve all facets of the disputes between them, the issue of defendant's legal right in the circumstances to claim set-off may remain as an issue that must be determined by a court. The summary proceedings framework in R. 4:67-6 contemplates *245 that possibility and authorizes the trial court to apply its processes to determine lingering legal issues so that, eventually, a judgment may enter fully disposing of all claims and counter-claims between the parties.
We have concluded that, in the circumstances presented, the trial court should have applied principles of primary jurisdiction and deferred to the Commissioner's and the Department's subject matter interest in addressing, in the first instance, all issues raised by both parties. We remand for the entry of an order temporarily transferring the matter to the Commissioner of Education, in which the trial court shall retain jurisdiction to resolve such legal issues as may remain once all the administrative proceedings bearing upon the current issues between the parties have been concluded.
Reversed and remanded.
NOTES
[*] Judge Petrella did not participate in oral argument, but has, with the consent of counsel, been added to the panel deciding the matter.