**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4138-16T2

CITY OF NORTH WILDWOOD,

    Plaintiff-Appellant,

v.

BOARD OF EDUCATION OF
THE CITY OF WILDWOOD,

    Defendant-Respondent.

_____

Argued October 3, 2018 – Decided July 8, 2019

Before Judges Fuentes, Vernoia and Moynihan.

On appeal from the Superior Court of New Jersey, Law Division, Cape May County, Docket No. L-0402-15.

Joseph Francis Betley argued the cause for appellant (Capehart & Scatchard PA, attorneys; Joseph Francis Betley, of counsel; Kelly E. Adler, on the briefs).

William Stephen Donio argued the cause for respondent (Cooper Levenson PA, attorneys; William Stephen Donio and Kelli A. Prinz, on the brief).

PER CURIAM

Since 2002, the Board of Education of the City of Wildwood (the Board) has leased space at St. Simeon's by-the-Sea Episcopal Church in North Wildwood to serve as a school facility for its preschool and kindergarten students. The Board leases this space because the City of Wildwood's existing elementary school is at full capacity and consequently unable to accommodate all of the students who fall within this age-group. On June 6, 2014, the City of North Wildwood (North Wildwood) challenged the Board's authority to lease and operate this educational facility located outside of its jurisdictional boundaries. North Wildwood views the Board's actions as ultra vires and as an intrusion on its municipal sovereignty. The Law Division did not find any legal or factual grounds to support North Wildwood's position. We affirm.

I

North Wildwood initially challenged the Board's operation of this school in a petition before the State Commissioner of Education (Commissioner), who referred the matter to the Office of Administrative Law for the development of an evidentiary record before an Administrative Law Judge (ALJ). The parties participated in discovery, and ultimately filed cross-motions for summary disposition, which the ALJ scheduled for oral argument on July 24, 2015. On July 23, 2015, North Wildwood moved before the ALJ to withdraw its Petition

without prejudice, to permit it to seek declaratory and injunctive relief against the Board in the Superior Court.

On August 14, 2015, North Wildwood filed a verified complaint in the Law Division seeking declaratory and injunctive relief. North Wildwood argued the Board did not have the legal authority to lease property located outside its municipal borders to operate an educational program for its students. North Wildwood also sought an order compelling the Board to find a suitable site to operate these educational programs within the City of Wildwood. Toward that end, North Wildwood sought an injunction prohibiting the Board from: (1) extending its lease beyond the 2015-2016 school year; and (2) operating any educational program located outside the City of Wildwood. Finally, without citing any legal authority to support this claim, North Wildwood asked the court to award it attorney's fees and costs incurred in the prosecution of this civil action. The Board filed a responsive pleading that included its own request for affirmative relief in the form of a declaratory judgment validating the manner it had operated its preschool and kindergarten programs since 2002.

While the matter proceeded in the Law Division through discovery, the ALJ granted North Wildwood's motion to withdraw its petition before the

A-4138-16T2

Commissioner but decided to dismiss the matter <u>with prejudice</u>. The ALJ provided the following explanation for taking this action:

> It was only after the extensive case analysis, workup and motion practice that North Wildwood abruptly withdrew its petition on July 23, 2015, one day before oral argument, cognizant that the case was close to being decided with finality. And North Wildwood . . . re-filed [its] claims with the Superior Court . . . . Nonetheless the majority rights and obligations still must be decided under education law ([T]itle 18A and [A]dministrative [C]ode 6A). . . . A Superior Court Judge would have to resort to Title 18A or Administrative Code 6A to decide the case.

> . . . .

> I CONCLUDE that the petition filed by North Wildwood must be DISMISSED with prejudice. North Wildwood's re-filing with the Superior Court under the <u>Declaratory Judgment Act</u> was strategic, tactical in nature, and jurisdictionally improper in the opinion of the undersigned. It came very late in the process and more importantly on the eve of possibly deciding the outcome of the case. The Commissioner of Education has primary jurisdiction over education matters. The Superior Court generally defers administrative matters to the respective state agencies where special expertise exists under the principle of exhaustion of administrative remedies or primary jurisdiction. <u>R.</u> 4:69-5. It would be unfair and prejudicial to [the Board] if the Superior Court invoked the exhaustion of administrative remedies or primary jurisdiction doctrines; rejected the relief sought by North Wildwood; and only to have the case refiled before the Commissioner. The taxpayers of both cities would

4

incur unnecessary legal expenses and an unnecessary delay in knowing the outcome of the case.

On January 4, 2016, the Commissioner adopted the ALJ's Initial Decision, and included the following admonition:

> [T]he Commissioner makes no findings as to the merits of [North Wildwood's] pending Superior Court action. Certainly, [North Wildwood] can elect to pursue its claim elsewhere . . . but not while leaving the door open to duplicative future litigation before the Commissioner. Given this late stage, and the well-documented efforts already expended by [the Board] to defend against and resolve this action, [North Wildwood] should be precluded from returning to the Commissioner with the same claim.

After 242 days of discovery in the Law Division, North Wildwood and the Board filed cross-motions for summary judgment which the court heard on March 3, 2017. On April 28, 2017, the motion judge issued an order granting the Board's motion for summary judgment and dismissing North Wildwood's complaint with prejudice.

As a threshold issue, the judge found North Wildwood had standing to seek declaratory relief because "the permissible locations where a municipality may host students for public education is a question of public interest, and given the liberalized standard for standing in New Jersey, the facts show . . . [North Wildwood] has a sufficient stake in the outcome." Although the Commissioner

A-4138-16T2

had previously dismissed with prejudice North Wildwood's petition, the motion judge concluded this did not preclude it from bringing this declaratory judgment action in the Law Division. The judge characterized the Commissioner's decision as predicated "purely on procedural grounds." In the judge's view, because the Commissioner did not decide the merits of the action, the doctrine of res judicata did not apply.

Against this backdrop, North Wildwood appeals arguing the Law Division erred in holding: (1) this issue was within the primary jurisdiction of the Commissioner; and (2) N.J.S.A.18A:20-4.2(a) gives the Board the express or implied authority to lease private property outside its municipal borders to operate a kindergarten or preschool program. In response, the Board argues whether it may lease space for the purposes of educating its preschool and kindergarten students involves the interpretation of Title 18A, and thus falls squarely within the primary jurisdiction of the Commissioner.

II

Before we begin our legal analysis, we will briefly describe the factual background that led to this legal dispute between these two public entities. The Board is "a body corporate" organized under N.J.S.A. 18A:10-1, responsible for

A-4138-16T2

the operation of the public schools in the City of Wildwood. The Board has a send-receive relationship with North Wildwood for grades nine through twelve.

In 2002, the Board entered into a lease agreement with St. Simeon's to use and occupy an annex to the church to house its preschool and kindergarten students. The Board formally approved this arrangement in the public session of a meeting, in accordance with the Open Public Meetings Act, N.J.S.A. 10:4-6 to -21. Since 2003, the Board has formally approved the renewal of the lease a number of times. The most recent lease which the Board approved on April 25, 2016, was for a three-year term beginning September 1, 2016 and ending on August 31, 2019. The State Department of Education, represented by the Executive County Superintendent of Schools for Cape May County, formally approved the use of the Annex as additional classroom space.

The Annex is located on the border of North Wildwood and the City of Wildwood and contains six classrooms, a teacher's lounge, two girl's bathrooms, two boy's bathrooms, three office spaces, a kitchen, and a playground. As of October 2016, 129 children were enrolled in the preschool and kindergarten classes. The Board and North Wildwood have separate liability insurance policies covering the Annex. In the event of a fire-related emergency at the

Annex, both the City of Wildwood Fire Department and the North Wildwood Fire Department have agreed to respond.

In a certification dated April 21, 2015, Kevin Yucco, the City Administrator of North Wildwood, claimed he first became aware that the Board was operating a school at the Annex in 2014, when the Chief of Police told him that the Cape May County Prosecutor's Office requested that he "enter into a Memorandum of Agreement[1] with [the Board] for the preschool and kindergarten students from the City of Wildwood that attend school at . . . the Annex at St. Simeon's." Yucco claimed that prior to this, he assumed St. Simeon's was operating a private day care or preschool program.

The Board claims North Wildwood was aware that it was using the Annex to accommodate its preschool and kindergarten programs because Patrick Rosenello, the current Mayor of North Wildwood, was a member of the Board as a Sending District Representative[2] when the Board first leased the Annex in

---

[1] See N.J.A.C. 6A:16-6.2(b)(13).

[2] Rosenello submitted a certification in response to the Board's position in this litigation in which he admits he was a member of the Board in 2002. However, he claims he was not aware of the lease arrangement because his role on the Board was statutorily circumscribed pursuant to N.J.S.A. 18A:38-8.1 and by a resolution the Board adopted prior to 2002 that limited his participation to "matters concerning Wildwood High School."

2002. The Board also notes that North Wildwood's Police and Fire Departments have conducted safety drills and presentations at the Annex during the relevant time period. The record also contains several articles published in local newspapers regarding Wildwood's students utilizing the Annex.

### III

We first address North Wildwood's standing to bring this action in the Law Division. The issue of standing is a legal question, which is subject to this court's de novo review. Courier-Post Newspaper v. Cty. of Camden, 413 N.J. Super. 372, 381 (App. Div. 2010) (citing In re Project Authorization Under N.J. Register of Historic Places Act, 408 N.J. Super. 540, 555 (App. Div. 2009)). "Standing 'refers to the plaintiff's ability or entitlement to maintain an action before the court.'" In re Adoption of Baby T, 160 N.J. 332, 340 (1999) (quoting N.J. Citizen Action v. Riviera Motel Corp., 296 N.J. Super. 402, 409 (App. Div. 1997)). New Jersey courts liberally grant a litigant standing to sue. Jen Elec., Inc. v. Cty. of Essex, 197 N.J. 627, 645 (2009). Generally, there is standing if the party seeking relief has "a sufficient stake and real adverseness with respect to the subject matter of the litigation [and a] substantial likelihood of some harm . . . in the event of an unfavorable decision[.]" Jen Elec., Inc., 197 N.J. at 645 (quoting In re Adoption of Baby T, 160 N.J. at 340).

A-4138-16T2

"The threshold to prove a party's standing is 'fairly low.'" EnviroFinance Grp., LLC v. Envtl. Barrier Co., LLC, 440 N.J. Super. 325, 340 (App. Div. 2015) (quoting Reaves v. Egg Harbor Twp., 277 N.J. Super. 360, 366 (App. Div. 1994)). Thus, where "the proceeding serves the public interest" and the "plaintiff is not simply an interloper," standing will likely be found. N.J. Citizen Action, 296 N.J. Super. at 415 (quoting In re Quinlan, 70 N.J. 10, 34-35 (1976)). In determining the question of a party's standing in a civil matter, a court should also consider if the issue implicates a substantial public interest. In re Grant of Charter to Merit Preparatory Charter Sch. of Newark, 435 N.J. Super. 273, 280 (App. Div. 2014) (finding standing where the issue involved a "substantial public interest"); Finkel v. Twp. Comm. of Hopewell, 434 N.J. Super. 303, 315-16 (App. Div. 2013).

North Wildwood argues it has standing because the legal question raised here is a novel one that implicates a matter of substantial public importance, to wit, "whether a public school district can continually and/or permanently operate its educational programs beyond its geographic and political limits . . . [.]" North Wildwood postulates several scenarios in which it would be required to expend municipal resources based only on Wildwood students' participation in and attendance of programs offered at the Annex.

These possible situations include: (1) dispatching public safety personnel from its Police and Fire Departments in response to incidents arising from the presence of students in the Annex; (2) participating in fire inspections and drills at the Annex; and (3) allocating North Wildwood employees to perform crossing guard duties for Annex-students. North Wildwood's arguments are predicated on the concern that, should a Wildwood student be injured or otherwise in need of emergency care at the Annex, North Wildwood public safety personnel would be required to assume the role of first responders.

By contrast, the Board argues North Wildwood has not provided any competent evidence that shows that in the twelve years the Annex has housed this educational program, North Wildwood has expended municipal resources exclusively due to Wildwood's children's use of the Annex. The Board also points out that North Wildwood is obligated to provide emergency services to anyone leasing the St. Simeon's site. Thus, North Wildwood has not suffered any actual harm nor expended additional resources due to the Board's use of the Annex.

Despite the Board's logically compelling arguments, the Law Division found North Wildwood had standing to raise this issue. The motion judge held that "the permissible locations where a municipality may host students for public

11

education is a question of public interest . . . [.]" In light of our State's well-settled jurisprudence in favor of granting a litigant standing to sue in cases involving issues of public interest, Jen Elec., Inc., 197 N.J. at 645, we hold that North Wildwood has, by the slimmest of margins, provided a sufficient basis to establish standing to litigate this case.

We turn next to the issue of jurisdiction. In this respect, we agree with the motion judge that the Commissioner has primary jurisdiction. The dispositive legal question is "whether [the Board] is permitted to have students attending school outside of its municipality, either temporarily or permanently." The judge thus rejected North Wildwood's attempt to reframe the issue to a determination of whether the Board was acting outside of its statutory authority. As the motion judge correctly held, the statutes applicable to this issue are all under Title 18A. Thus, this issue squarely falls under the Commissioner's primary jurisdiction.

We review the Law Division's decision de novo because it was based entirely on a question of law. State v. Quaker Valley Farms, LLC, 235 N.J. 37, 55 (2018). To determine whether the doctrine of primary jurisdiction applies, a court must weigh the following factors:

> 1) whether the matter at issue is within the conventional experience of judges; 2) whether the matter is

peculiarly within the agency's discretion, or requires agency expertise; 3) whether inconsistent rulings might pose the danger of disrupting the statutory scheme; and 4) whether prior application has been made to the agency.

[Muise v. GPU Inc., 332 N.J. Super. 140, 160 (App. Div. 2000) (quoting Boldt v. Correspondence Mgmt., Inc., 320 N.J. Super. 74, 85 (1990)).]

Because the controversy before us involves the application and interpretation of Title 18A, the Commissioner has primary jurisdiction to hear and determine all of the issues raised by the parties. Bower v. Bd. of Educ. of E. Orange, 149 N.J. 416, 420 (1997); G.D.M. v. Bd. of Educ. of Ramapo Indian Hills Reg'l High Sch. Dist., 427 N.J. Super. 246, 259 (App. Div. 2012). The New Jersey School Laws, N.J.S.A. 18A:1-1 to -76-4, empower local school boards to operate public schools for their respective districts. See N.J.S.A. 18A:8-1; N.J.S.A. 18A:10-1; N.J.S.A. 18A:11-1. The Department of Education is "a principal department in the executive branch of the state government." N.J.S.A. 18A:4-1. The Commissioner is "[t]he chief executive and administrative officer of the department," who has "general charge and supervision of the work of the department," N.J.S.A. 18A:4-22(a), and has "jurisdiction to hear and determine . . . all controversies and disputes arising under the school laws . . . [.]" N.J.S.A. 18A:6-9.

13

As an appellate court, we owe "institutional respect . . . for the Commissioner's first-instance jurisdiction 'to hear and determine . . . all controversies and disputes arising under the school laws[.]'" Archway Programs, Inc. v. Pemberton Twp. Bd. of Educ., 352 N.J. Super. 420, 424 (App. Div. 2002) (second and third alterations in original) (quoting N.J.S.A. 18A:6-9). Moreover, "[t]he Commissioner's authority is plenary." Ibid. (citing Abbott v. Burke, 100 N.J. 269, 301 (1985)). Thus, "the Commissioner of Education has primary jurisdiction to hear and determine all controversies arising under the school laws." Bower v. Bd. of Educ. of E. Orange, 149 N.J. 416, 420 (1997) (citing N.J.S.A. 18A:6-9). The Board of Education is the "agency ultimately charged with implementation of the school laws." The Commissioner's "statutory interpretation is entitled to considerable weight, where not inconsistent with the statute and in harmony with the statutory purpose." Kletzkin v. Bd. of Educ.of Spotswood, 136 N.J. 275, 278 (1994).

We thus affirm the Law Division's order dismissing North Wildwood's declaratory judgment action. We do not express any opinion concerning whether North Wildwood is barred from seeking any relief before the Commissioner under the doctrine of res judicata or judicial estoppel.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4138-16T2