**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3079-22

PATERSON BOARD OF
EDUCATION,

 Plaintiff-Appellant,

v.

PRITCHARD INDUSTRIES, INC.
and THOMAS MARTIN,

 Defendants-Respondents.

_____

Argued November 14, 2024 – Decided January 30, 2025

Before Judges Marczyk and Paganelli.

On appeal from the Superior Court of New Jersey, Law Division, Passaic County, Docket No. L-2013-22.

Bryant Lawrence Horsley, Jr., argued the cause for appellant (Souder Shabazz & Woolridge Law Group, LLP, attorneys; Khalifah Shabazz-Charles, of counsel; Bryant Lawrence Horsley, Jr., of counsel and on the briefs).

Patrick T. Collins argued the cause for respondents (Skoloff & Wolfe, PC, attorneys; Patrick T. Collins, on the brief).

PER CURIAM

Plaintiff Paterson Board of Education (Paterson) appeals from the trial court's April 28, 2023 order granting defendants Pritchard Industries, Inc.'s and Thomas Martin's (collectively Pritchard) motion for reconsideration and entering summary judgment in favor of defendants. Plaintiff further appeals from the trial court's June 9, 2023 order denying plaintiff's motion for clarification and February 17, 2023 order denying plaintiff's motion to dismiss defendants' counterclaim. Following a review of the record, the parties' arguments, and the applicable legal principles, we affirm in part and remand in part for further proceedings.

I.

This appeal concerns the trial court's interpretation of N.J.S.A. 18A:7F-9(e)(3), a statute enacted shortly after the start of the COVID-19 pandemic, which required school districts to continue to make payments to their contracted service providers when schools were closed during the public-health-related emergency.

Pritchard provides custodial services to many New Jersey public school districts. Pritchard has a history of performing services for Paterson under yearly contracts awarded pursuant to public bidding. Pritchard was awarded an

$8.2 million public contract to provide custodial services for Paterson during the 2019-2020 school year, beginning July 2019 and ending June 30, 2020. In exchange for those services, Paterson agreed to pay $620,250.09 per month, plus additional charges for supplies requested by Paterson, upon receiving an invoice and certified payroll from Pritchard.

Consistent with the contract, Pritchard provided custodial services, invoiced Paterson for the services rendered, and received monthly payments from Paterson. However, in March 2020, Governor Philip D. Murphy signed executive orders declaring a state of emergency due to the COVID-19 pandemic and ordered all public school districts to close. Exec. Order No. 103 (March 9, 2020), 52 N.J.R. 549(a) (Apr. 6, 2020); Exec. Order No. 104 (March 16, 2020), 52 N.J.R. 550(a) (Apr. 6, 2020). As a result, the Superintendent of Paterson closed all facilities to students and nonessential staff on March 18. Paterson subsequently notified Pritchard that it was suspending all custodial services as of March 26 in line with the Governor's executive orders. Thus, Pritchard and its employees could not provide services to Paterson from March 26 until permitted to return to the schools on July 6, 2020.

As a result of the pandemic, the Legislature amended N.J.S.A. 18A:7F-9, which became effective immediately on April 14, 2020, requiring school

districts to continue making payments to their contracted service providers as if services had been provided and as if school facilities had remained open. L. 2020, c. 27 (codified at N.J.S.A. 18A:7F-9(e)(3)). The statute was amended on June 29, 2020, with a minor change clarifying that payments received by the contracted service provider were to be used to pay employees. The amended statute, in pertinent part, provides:

> If the schools of a school district are subject to a health-related closure for a period longer than three consecutive school days, which is the result of a declared state of emergency . . . then the school district shall continue to make payments of . . . compensation . . . pursuant to the terms of a contract with a contracted service provider in effect on the date of the closure as if the services for such . . . compensation . . . had been provided, and as if the school facilities had remained open. Payments received by a contracted service provider pursuant to this paragraph shall be used to meet the payroll and fixed costs obligations of the contracted service provider, and employees of the contracted service provider shall be paid as if the school facilities had remained open and in full operation.[1] A school district shall make all reasonable efforts to renegotiate a contract in good faith subject to this paragraph and may direct contracted service providers, who are a party to a contract and receive payments from the school district under this paragraph, to provide services on behalf of the school district which may reasonably be provided and are within the general expertise or service provision of the original contract.

---

[1] The underlined language was the only change made to the statute on June 29, 2020.

4

Negotiations shall not include indirect costs such as fuel or tolls. As a condition of negotiations, a contracted service provider shall reveal to the school district whether the entity has insurance coverage for business interruption covering work stoppages. A school district shall not be liable for the payment of . . . compensation . . . pursuant to the terms of a contract with a contracted service provider under this paragraph for services which otherwise would not have been provided had the school facilities remained open. Nothing in this paragraph shall be construed to require a school district to make payments to a party in material breach of a contract with a contracted service provider if the breach was not due to a closure resulting from a declared state of emergency . . . .

[(Emphasis added).]

In accordance with the statute, Pritchard sent Paterson the following invoices: (1) an April 2020 invoice for the fixed monthly rate of $620,250.09; (2) an additional April 2020 invoice for $60,800 worth of janitorial supplies; (3) a May 2020 invoice for the monthly payment of $620,250.09; (4) a June 2020 invoice for the monthly payment of $620,250.09; and (5) a July 2020 invoice in the amount of $591,417.42.

On July 21, 2020, Paterson informed Pritchard's billing department that the April, May, and June invoices were rejected because "[n]o services were rendered (due to COVID-19 school closures)" and "[n]o certified payroll" had been provided. Nevertheless, during a board meeting in August 2020, Paterson

voted to approve a bill list that included payments for Pritchard's $60,800 April supplies invoice and $620,250.09 for the May and June invoices. Shortly thereafter, Pritchard received a check for $1,301,300.18. Paterson, however, did not pay Pritchard's April invoice for $620,250.09 and only paid $514,276.02 of Pritchard's July invoice, withholding $77,141.40 as a prorated reduction based on Pritchard's inability to return to work until July 6.

Paterson received a letter in June 2021 from the International Union of Operating Engineers, Local 68 (Local 68), on behalf of Pritchard's employees. The letter advised Paterson that Pritchard laid off its employees at the outset of the pandemic. Local 68 stated it believed Paterson made two payments to Pritchard, and Pritchard, in turn, should have used the payments to pay its employees. Local 68 acknowledged its employees had been paid from the first payment made to Pritchard but had not yet received their wages from the second payment.[2] Thus, Local 68 requested information as to the status of any funds

---

[2] It is not clear what "second" payment Local 68 was referencing, and the union did not specify which payroll periods its employees were paid. Pritchard maintains that upon receipt of the May and June payments from Paterson, it paid the custodians for those payroll periods. Martin certified Pritchard could not pay its employees for the month of April because Paterson was withholding payment for that month. We note that Local 68 has not asserted any claim against Pritchard in this action or disputed that its members were not paid as represented by Pritchard.

transferred by Paterson to Pritchard in order to enforce its collective bargaining agreement against Pritchard.

The letter prompted Superintendent Eileen Shafer to investigate the matter. As a result of her inquiry, Paterson sent Pritchard a letter demanding it return the $1,301,300.18 and claiming Pritchard: (1) breached the contract by accepting the payment without performing janitorial services; (2) had been unjustly enriched to the detriment of "Paterson's vulnerable students who rely on that money" for school-related goods and services; and (3) failed to comply with N.J.S.A. 18A:7F-9(e)(3). Paterson also enclosed a questionnaire to "ensure legal compliance, good faith negotiations, and determination of reasonable payments to [Pritchard] for services that were not rendered from April 2020 through June of 2020." Pritchard never responded to the questionnaire or returned the payments.

In July 2022, Paterson held a board meeting and adopted a resolution "declaring null and void" and "rescinding" its prior decision to approve the $1,301,300.18 payment to Pritchard. The resolution stated that the "overpayments" to Pritchard "were illegal and were secured pursuant to a breach of contract." The board "believe[d] it [wa]s entitled to an immediate return of

A-3079-22

the $1,301,300.18" and authorized counsel to pursue legal action to recover the money.

Paterson filed a complaint based on multiple theories of liability, and demanded Pritchard immediately return the $1,301,300.18 payment.[3] Pritchard filed an answer and asserted three counterclaims against Paterson, seeking payment for the $620,250.09 April invoice and the $77,141.40 outstanding balance on the July 2020 invoice.[4]

---

[3] The ten counts, discussed more fully below, included: various breach of contract claims based on Pritchard's failure to perform custodial services during the school closures; "statutory and legal violations [and] impediments to contract" based on Pritchard soliciting payments before the supposed July 29, 2020 effective date of N.J.S.A. 18A:7F-9(e)(3) and violations of the Impairment of Contract Clauses of the U.S. Constitution and New Jersey Constitution; lack of consideration for the payments, and an unconscionable "no-show" contract; claims that Pritchard was unjustly enriched by retaining the $1,301,300.18; violations of the implied covenant of good faith and fair dealing; promissory estoppel; conversion and civil theft by retaining the payment without performing janitorial services or applying it to cover employee wages; claims that Pritchard made fraudulent misrepresentations; and tortious interference with contractual relations.

[4] Pritchard's counterclaim alleged Paterson breached the contract because N.J.S.A. 18A:7F-9 precluded Paterson from disclaiming its obligation to pay Pritchard under the contract, even though Pritchard could not perform custodial services. Next, Pritchard claimed Paterson's failure to pay the invoices unjustly enriched Paterson beyond its contractual rights. Lastly, Pritchard argued Paterson failed to follow a statutory obligation because N.J.S.A. 18A:7F-9 required Paterson to pay Pritchard as if schools remained open, but Paterson never paid the April and July 2020 invoices.

Pritchard filed a motion for summary judgment seeking to dismiss Paterson's complaint, which included a certification from Martin. Pritchard first argued the plain language of N.J.S.A. 18A:7F-9, as well as the legislative history and intent of the statute, required Paterson to pay the April and July invoices, totaling $697,391.49. Pritchard contended Paterson misread the statute as imposing the burden of renegotiating the contract on Pritchard. Instead, Paterson had an obligation to make a good faith effort to renegotiate but failed to do so, and demanding money back through a "Questionnaire" sent more than a year after tendering payment was irrelevant. Lastly, Pritchard contended N.J.S.A. 18A:7F-9(e)(3) became effective on April 14, 2020, not June 29, 2020, when it was amended. Pritchard further argued, "the statute should apply retroactively to at least" March 26, 2020, when Paterson closed its schools.

Paterson opposed Pritchard's motion, supported by a certification from Superintendent Shafer, and cross-moved for summary judgment on Pritchard's counterclaims. Paterson's opposition brief argued: (1) N.J.S.A. 18A:7F-9(e)(3) was effective June 29, 2020, and must be applied prospectively because the Legislature neither expressly nor impliedly intended to give it retroactive effect; (2) Pritchard's claims for additional payments failed for lack of consideration

because it did not perform janitorial services; and (3) Paterson could establish a prima facie case for all ten counts in its complaint.

Paterson's cross-motion for summary judgment sought to dismiss Pritchard's counterclaims for payment of the $620,250.09 April invoice and the remaining $77,141.40 from the July invoice. Paterson argued: (1) the Commissioner of Education (Commissioner), not the courts, has exclusive jurisdiction over matters arising under N.J.S.A. 18A:7F-9(e)(3) or, alternatively, has primary jurisdiction to interpret and enforce the statute; (2) N.J.S.A. 18A:7F-9(e)(3) does not provide Pritchard "a private right to a cause of action" against Paterson, and Pritchard first needs to exhaust administrative remedies; (3) Pritchard's claim is barred by Rule 4:69-1 and the doctrine of laches; (4) a ruling in favor of Pritchard's counterclaims requires the court to interpret N.J.S.A. 18A:7F-9(e)(3) in violation of the Contracts Clause of the United States and New Jersey Constitutions; and (5) Pritchard cannot establish a prima facie case of breach of contract, unjust enrichment, or failure to follow N.J.S.A. 18A:7F-9(e)(3).

On February 17, 2023, the court denied Pritchard's motion for summary judgment and granted Paterson's cross-motion for summary judgment on

10

Pritchard's counterclaims.[5]  The court found "Pritchard was not required to render its services, contrary to Paterson's numerous protestations as to Pritchard's lack of services."  Nevertheless, the court did not fully interpret the statute because it concluded that "Pritchard did not comply with its underlying contract with Paterson."  Specifically, the contract made Paterson's obligation to pay Pritchard contingent "upon receipt of supporting documentation from [Pritchard] in the form required by" Paterson.  However, Pritchard did not provide the certification of payroll Paterson requested but instead offered a payroll dated October 2, 2020,[6] which failed to explain the amounts paid to employees during May and June 2020.  Therefore, the court held Pritchard failed to comply with the statute.

In granting Paterson's cross-motion for summary judgment as to Pritchard's counterclaims, the court found the breach of contract and unjust enrichment claims failed because Paterson had the right to seek payroll documentation before paying Pritchard.  The failure to follow a statutory

---

[5]  The court also denied Paterson's motion to dismiss the counterclaim as untimely under Rule 1:4-8, but appears to have granted the same relief by granting Paterson's cross-motion for summary judgment dismissing Pritchard's counterclaim.

[6]  The court stated the payroll was dated October 2022, but it is actually dated October 2020.

obligation counterclaim also failed because the court found the Commissioner had jurisdiction over claims arising under Title 18A, and thus, enforcement and interpretation of N.J.S.A. 18A:7F-9(e)(3) was subject to the Commissioner's jurisdiction. Therefore, it dismissed Pritchard's counterclaims.

Pritchard subsequently moved for reconsideration of the February 17, 2023 order. An additional certification from Martin explained the parties' payment process. He noted Pritchard would issue an invoice to Paterson at the start of each month for that month's services and, at the end of the month, provide Paterson with a copy of its payroll showing its employees were paid. Paterson would then issue a check sixty to ninety days after the end of the month. Martin further certified the October 2020 payroll reflects that Pritchard paid its employees for May and June 2020 using the $1,301,300.18 it received from Paterson, and it is dated October 2020 because that was when Paterson paid the May and June invoices.

Pritchard argued it was entitled to summary judgment on its breach of contract counterclaim because N.J.S.A. 18A:7F-9(e)(3) obligated Paterson to pay Pritchard for the period of time it could not render services due to school closures, "just as if Pritchard ha[d] rendered those services in full." Pritchard also argued the court erred in granting Paterson's motion for summary judgment

based on Pritchard's failure to provide payroll documentation under the contract because it overlooked the fact that the school closures from April through July prevented Pritchard's employees from performing services for Paterson, and thus, Pritchard had no payroll to provide for those months. Lastly, Pritchard contended the court did not lack jurisdiction to interpret and apply N.J.S.A. 18A:7F-9(e)(3) merely because it is codified under Title 18A; rather, it had authority to rule on the parties' contractual rights and obligations.

Paterson opposed the motion arguing: it was not timely filed under Rule 4:49-2; Pritchard breached its contract for failing to produce payroll documentation, as required by the contract, and by not performing services from April to June; and the court cannot interpret and enforce N.J.S.A. 18A:7F-9(e)(3) because the Commissioner has jurisdiction over Title 18A matters.

The court granted Pritchard's motion for reconsideration, reversed its earlier decision, granted Pritchard summary judgment, and awarded Pritchard $697,031. First, the court rejected Paterson's argument that Pritchard did not comply with Rule 4:49-2, which governs motions to alter final judgments, because the previous decision was not a final order disposing of all issues but rather an interlocutory order dismissing Pritchard's counterclaims.

Next, the court held that although the Commissioner has jurisdiction over disputes arising under school laws, N.J.S.A. 18A:6-9, "the present case is essentially one of breach of contract that requires the interpretation of N.J.S.A. 18A:7F-9(e)(3)." The court found that Pritchard's interpretation of the statute comports with the parties' understanding of the contract. It noted Pritchard's staff was not permitted in Paterson's schools from April to July due to the pandemic and thus could not perform custodial services. Yet, Paterson proceeded to request Pritchard's payroll despite Pritchard stating it did not have one because it had not paid its staff due to the school closures. It further noted that while Pritchard provided the October 2020 payroll showing it paid its staff using the $1,301,300.18 payment, Paterson filed a complaint alleging Pritchard breached its contract and did not fulfill its obligations to provide payroll records and renegotiate under N.J.S.A. 18A:7F-9(e)(3).

Interpreting the statute, the court stated:

> The statute requires school districts to continue to make payments pursuant to the terms of a contract with a contracted service provider in effect on the date of the closure as if the services for such . . . compensation . . . had been provided, and as if the school facilities had remained open. The statute then states that the payments that are received shall be used to meet the payroll and fixed costs obligations of the contracted service provider.

14

Notably, the court indicated the statutory text did not grant Paterson authority or responsibility to ensure payments were used for employees who were laid off by Pritchard but instead merely directed Paterson to pay Pritchard. Moreover, N.J.S.A. 18A:7F-9(e)(3) imposed the responsibility on Paterson to "make all reasonable efforts to renegotiate a contract in good faith." Additionally, Paterson's actions in sending the "Questionnaire" and demand for "production of Pritchard's payroll records" did "not strike" the court as being in good faith because the burden to renegotiate was not on Pritchard but Paterson, which it failed to do.

Lastly, the court rejected Paterson's contention that it needed the money "to educate its students who overwhelmingly suffered from educational and other pandemic-related losses" because it did not provide documentation of these unanticipated expenditures. The court also held Paterson failed to satisfy its responsibility under the statute, and "a contract and a statute cannot be negated by Paterson's supposed losses, which Pritchard no doubt also suffered during the pandemic." Thus, the prior order was reversed. The court awarded Pritchard $697,031 based on Paterson owing Pritchard for the April invoice of $620,250.09 and the outstanding balance of $77,141.40 for the July invoice.

A-3079-22

## II.

On appeal, Paterson principally argues we should correct "two main issues" on appeal. First, it asserts the Legislature did not confer a private cause of action for private vendors under N.J.S.A. 18A:7F-9(e)(3). Rather, pursuant to the statute, the Commissioner retained exclusive jurisdiction to adjudicate the claims at issue, and defendants failed to exhaust administrative remedies with the Commissioner. Second, plaintiff contends the court erred by granting defendants' motion for reconsideration, and entering summary judgment, despite the existence of disputed material facts and discovery not being completed.[7]

We review the disposition of a summary judgment motion de novo, applying the same standard used by the motion judge. Townsend v. Pierre, 221 N.J. 36, 59 (2015). Like the motion judge, we view "the competent evidential materials presented . . . in the light most favorable to the non-moving party, [and determine whether they] are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Town of Kearny v. Brandt, 214 N.J. 76, 91 (2013) (quoting Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995)); see also R. 4:46-2(c). "Where the record taken

---

[7] Despite this initial focus on two claims in its brief, plaintiff submits nineteen points on appeal including twenty-four subparts.

as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Alfano v. Schaud, 429 N.J. Super. 469, 474-75 (App. Div. 2013) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986)).

We review a trial judge's decision on whether to grant or deny a motion for reconsideration for an abuse of discretion. JPC Merger Sub LLC v. Tricon Enters., Inc., 474 N.J. Super. 145, 160 (App. Div. 2022). "Where the order sought to be reconsidered is interlocutory, as in this case, Rule 4:42-2 governs the motion." Ibid. Under Rule 4:42-2, "interlocutory orders 'shall be subject to revision at any time before the entry of final judgment in the sound discretion of the court in the interest of justice.'" Lawson v. Dewar, 468 N.J. Super. 128, 134 (App. Div. 2021). Compare DEG, LLC v. Twp. of Fairfield, 198 N.J. 242, 261 (2009) (explaining relief under Rule 4:50-1 is "granted sparingly" (quoting F.B. v A.L.G., 176 N.J. 201, 207 (2003))), with Lawson, 468 N.J. Super. at 134 (explaining only the court's "'sound discretion' and the 'interest of justice' guide[]" the disposition of a motion for reconsideration under Rule 4:42-2 (quoting R. 4:42-2)). In this instance, the court was not constrained in its determination of the reconsideration motion by the summary judgment record and could properly consider defendants' newly asserted arguments presented in

17

support of the reconsideration motion.  Lombardi v. Masso, 207 N.J. 517, 537 (2011).

We apply well-established principles when engaging in statutory interpretation.  "The overriding goal" of statutory interpretation "is to determine . . . the intent of the Legislature, and to give effect to that intent."  State v. Hudson, 209 N.J. 513, 529 (2012).  We begin with the understanding "the language of the statute, and the words chosen by the Legislature should be accorded their ordinary and accustomed meaning."  Ibid.  "Where the plain language of a statute is clear, we enforce the statute as written."  Correa v. Grossi, 458 N.J. Super. 571, 579 (App. Div. 2019) (citing DiProspero v. Penn, 183 N.J. 477, 492 (2005)).

Moreover, "[i]f the language leads to a clearly understood result, the judicial inquiry ends without any need to resort to extrinsic sources."  Hudson, 209 N.J. at 529.  "[E]xtrinsic aids may not be used to create ambiguity when the plain language of the statute itself answers the interpretative question; however, when the statutory language results in more than one reasonable interpretation, then resort may be had to other construction tools . . . in the analysis."  Id. at 529-30 (citing State v. Shelley, 205 N.J. 320, 323-24 (2011)).  These may "includ[e] legislative history, committee reports, and contemporaneous

construction." DiProspero, 183 N.J. at 492-93 (quoting Cherry Hill Manor Assocs. v. Faugno, 182 N.J. 64, 75 (2004)).

A.

Paterson argues the court lacked jurisdiction over Pritchard's counterclaims because N.J.S.A. 18A:7F-9(e)(3) arises under Title 18A, and the Commissioner "retains exclusive jurisdiction" over matters arising under school laws. It contends "Pritchard does not allege . . . money is owed pursuant to a breach of contract," but instead demands relief based "wholly on the application of [a] school law statute, N.J.S.A. 18A:7F-9(e)(3)," which falls under the Commissioner's jurisdiction. Paterson further claims the Administrative Code and caselaw "confirm[]" the Commissioner's jurisdiction.

Paterson contends that if the Commissioner does not have exclusive jurisdiction, the court still lacks primary jurisdiction over Pritchard's counterclaim. Citing to Nordstrom v. Lyon, plaintiff notes the following four factors must be weighed when determining the application of the primary jurisdiction doctrine:

> 1) whether the matter at issue is within the conventional experience of judges; 2) whether the matter is peculiarly within the agency's discretion, or requires agency expertise; 3) whether inconsistent rulings might pose the danger of disrupting the statutory scheme; and

19

4) whether prior application has been made to the agency.

[424 N.J. Super. 80, 99 (App. Div. 2012) (quoting Muise v. GPU, Inc., 332 N.J. Super. 140, 160 (App. Div. 2000)).]

Paterson asserts the issues in this case are not within the conventional experience of a judge, but rather the interpretation of how the statute applies to school districts falls within the expertise of the Commissioner. It argues the interpretation of N.J.S.A. 18A:7F-9(e)(3) is not a purely legal issue and requires an analysis of how it burdens school districts. It also claims the court's decision will cause inconsistent rulings and risk disrupting the statutory scheme.

Pritchard counters that it was Paterson who initially brought this claim in Superior Court. If Paterson maintained that the exclusive jurisdiction for all matters falling under Title 18A lies with the Commissioner, it should have petitioned the Commissioner for relief under N.J.S.A. 18A:7F-9(e)(3). Pritchard asserts Paterson waived its rights by proceeding in Superior Court and that the entire controversy doctrine requires the disposition of both Paterson's suit and Pritchard's counterclaims in a single proceeding. It argues N.J.S.A. 18A:6-9 does not confer exclusive jurisdiction and notes that trial courts routinely address cases brought under the Public Schools Contract Laws, N.J.S.A. 18A:18A-1 to -68. Pritchard also relies on Archway Programs, Inc. v.

<u>Pemberton Township Board of Education</u>, for the proposition that contract claims against school districts are properly addressed by trial courts. 352 N.J. Super. 420, 425 (App. Div. 2002).

We conclude the trial court correctly determined the Commissioner does not have exclusive jurisdiction under the facts of this case. The statute granting the Commissioner's jurisdictional authority provides, "[t]he commissioner shall have jurisdiction to hear and determine . . . all controversies and disputes arising under the school laws . . . ." N.J.S.A. 18A:6-9. This court has noted the "institutional respect . . . for the Commissioner's first-instance[, or primary,] jurisdiction" over school-related matters. <u>Archway Programs</u>, 352 N.J. Super. at 424. "Under the doctrine of primary jurisdiction, when enforcement of a claim requires resolution of an issue within the special competence of an administrative agency, a court may defer to a decision of that agency." <u>Campione v. Adamar of N.J., Inc.</u>, 155 N.J. 245, 263 (1998).

Although we have noted "[t]he Commissioner's authority is plenary," the sweep of its jurisdiction "does not extend to all matters involving boards of education." <u>Archway Programs</u>, 352 N.J. Super. at 424-25. Notably, "contract claims against boards do not arise under the school laws but rather from statutory or common law" and are "typically and appropriately adjudicated in the courts."

21

Id. at 425. Consequently, "[t]he basic proposition that no administrative officer or agency, absent a specific grant of legislative authority, is empowered to decide questions of law, such as those arising in contract actions, applies to the Commissioner of Education." Id. at 426.

Therefore, notwithstanding N.J.S.A. 18A:6-9 failing to grant the Commissioner exclusive jurisdiction over all disputes related to Title 18A, our courts have consistently held questions of law, including statutory construction and specific actions in contract, "do not require [the] exhaustion of administrative remedies before resort may be had to the courts." Wilbert v. DeCamp, 72 N.J. Super. 60, 68 (App. Div. 1962). Moreover, Paterson has failed to provide any controlling authority where a contract dispute was adjudicated before the Commissioner relating to an issue of statutory interpretation under Title 18A.

We observe that our courts have retained jurisdiction over a dispute involving different interpretations of the proper method for calculating tax assessments under N.J.S.A. 18:8-17(3) because "courts are uniquely suited" to decide matters of statutory interpretation. Borough of Matawan v. Monmouth Cnty. Bd. of Tax'n, 51 N.J. 291, 297 (1968). Similarly, we have found that an arbitrator and, subsequently, a trial court, had jurisdiction to interpret N.J.S.A.

18A:28-6.1, which required school districts agreeing to receive students from a discontinued school to offer employment to teachers from the discontinued school. Buena Bd. of Educ. v. Buena Reg'l Educ. Ass'n, 300 N.J. Super. 415, 418 (App. Div. 1997).

Contrary to Paterson's broad view of the Commissioner's jurisdiction, neither case law nor N.J.S.A. 18A:6-9 afford the Commissioner "exclusive jurisdiction" over all disputes arising under Title 18A. Likewise, the doctrine of primary jurisdiction did not divest the trial court of jurisdiction because matters involving contract and statutory interpretation fall within the expertise of the courts, even when implicating a statute within the sphere of school laws. Paterson further argues N.J.S.A. 18A:7F-9(a) confirms the Commissioner's jurisdiction because it authorizes the Commissioner "to withhold all or part of a district's State aid for failure to comply with any rule, standard or directive." However, this argument is unavailing because the Commissioner's ability to withhold state funding does not suggest that courts are precluded from interpreting N.J.S.A. 18A:7F-9(e)(3) to enforce a contract between a school district and a contracted service provider.

Indeed, as the trial court correctly found, "the present case is essentially one of breach of contract that requires the interpretation of N.J.S.A. 18A:7F-

23

9(e)(3)." Paterson's complaint asserts numerous claims implicating the statute, including Pritchard's alleged breach of contract and violation of N.J.S.A. 18A:7F-9(e)(3). Similarly, Pritchard asserts counterclaims based on breach of contract, unjust enrichment, and failure to follow N.J.S.A. 18A:7F-9(e)(3). Accordingly, the court did not err in invoking jurisdiction to interpret N.J.S.A. 18A:7F-9(e)(3) and determining its impact on the parties' contractual rights and obligations.

## B.

Paterson next argues Pritchard cannot properly maintain this action because the Legislature did not imply a private right of action against school districts to enforce violations of N.J.S.A. 18A:7F-9(e)(3). Paterson contends the "[l]egislative scheme . . . obviate[d] the need for [Pritchard] to pursue a private cause of action in Superior Court," and Pritchard was required to first exhaust all administrative remedies. It proceeded to cite to statutes where the Legislature expressly conferred a private right to sue a public entity in court. See Open Public Records Act, N.J.S.A. 47:1A-6; New Jersey Tort Claims Act, N.J.S.A. 59:1-1 to :12-3.

Pritchard contends Paterson's arguments would vitiate the effect of N.J.S.A. 18A:7F-9(e)(3) because the absence of a private right of action would

24

allow school districts to withhold payments and deny contractors the ability to pursue monetary compensation it is owed. It asserts that local boards of education can, and frequently are, sued for breach of contract and there is no statutory authorization required to do so.

The parties agree that N.J.S.A. 18A:7F-9(e)(3) does not expressly authorize a private right of action, and thus, the issue presented is whether a private right of action is implied. "New Jersey courts have been reluctant to infer a statutory private right of action where the Legislature has not expressly provided for such action." R.J. Gaydos Ins. Agency, Inc. v. Nat'l Consumer Ins. Co., 168 N.J. 255, 271 (2001). However, the Gaydos Court set forth a tripartite test to determine if there is an implied private right of action in a statute. The Court noted:

> To determine if a statute confers an implied private right of action, courts consider whether: (1) [the party asserting the action] is a member of the class for whose special benefit the statute was enacted; (2) there is any evidence that the Legislature intended to create a private right of action under the statute; and (3) it is consistent with the underlying purposes of the legislative scheme to infer the existence of such a remedy.
>
> [Id. at 272.]

"Although courts give varying weight to each one of those factors, 'the primary goal has almost invariably been a search for the underlying legislative intent.'" Id. at 272-73 (quoting Jalowiecki v. Leuc, 12 N.J. Super. 22, 30 (App. Div. 1981)).

Viewing N.J.S.A. 18A:7F-9(e)(3) under the lens of this test convinces us the statute provides a private right of action. N.J.S.A. 18A:7F-9(e)(3) requires school districts to continue making "payments of . . . compensation . . . pursuant to the terms of a contract with a contracted service provider . . . as if the services for such . . . compensation . . . had been provided, and as if the school facilities had remained open." It also provides that contracted service providers are to use those payments "to meet the payroll and fixed costs obligations of the contracted service provider" and to pay its employees "as if the school facilities had remained open and in full operation." Ibid.

Regarding the first prong, contracted service providers, like Pritchard and its employees, are most certainly members of the class that the statute intended to benefit. The statute became effective during the height of the COVID-19 pandemic, and hence, intended to remediate contracted service providers' and their employees' sudden loss of income from the school closures.

Under the second prong, courts have found the Legislature did not intend to confer a private right of action if the "statutory scheme vests enforcement powers exclusively in the Commissioner," authorizes the Commissioner to impose civil penalties on violators, and "gives the Commissioner the authority to set up comprehensive procedures for resolving [disputes]" under the applicable statute. R.J. Gaydos Ins. Agency, Inc., 168 N.J. at 280.

Here, regarding the second prong, the Legislature intended to confer a private right of action because N.J.S.A. 18A:7F-9 does not vest the Commissioner with the power of exclusive enforcement, or to impose civil penalties. As we concluded above, the Commissioner did not have exclusive jurisdiction. Moreover, we determine the Legislature intended to create a private right of action because the statute speaks in terms of school districts continuing to compensate the contractors as if the schools had remained open, which would be rendered meaningless if there was no enforcement mechanism.

Under the third prong, courts consider whether an implicit private right of action furthers rather than frustrates the legislative scheme. In re State Comm'n of Investigation, 108 N.J. 35, 44 (1987). Here, we likewise conclude a private right of action is consistent with and furthers the legislative scheme because the provisions of N.J.S.A. 18A:7F-9 intend to ease the negative impacts of health-

27

related school closures, but provide no specific mechanism for enforcement. Thus, absent a private right of action to enforce contractual rights against school districts, a party's opportunity under the statutory scheme to address the harms caused by prolonged school closures would be frustrated.

We are also unpersuaded by Paterson's argument that N.J.S.A. 18A:7F-9(e)(3) does not provide Pritchard a private remedy and, therefore, no implied cause of action. Paterson overlooks that Pritchard's remedy lies not within the statute but in enforcing the terms of the parties' contract pursuant to the statute. That is, N.J.S.A. 18A:7F-9(e)(3) is a mechanism satisfying Pritchard's contractual obligation to perform the custodial services it would have rendered but for the prolonged health-related school closure. Specifically, if schools are subject to a health-related closure longer than three consecutive days, "then the school district shall continue to make payments of . . . compensation . . . <u>pursuant to the terms of a contract with a contracted service provider</u> . . . as if the services for such . . . compensation . . . had been provided, and as if the school facilities had remained open." N.J.S.A. 18A:7F-9(e)(3) (emphasis added).

In essence, the statute reflects a contractor's inability to perform contractual services during prolonged school closures and directs that the services are considered to have been performed. Hence, by operation of the

statute, Pritchard satisfied its obligation to perform custodial services and triggered Paterson's obligation to make payments pursuant to the terms of the parties' contract. Therefore, Pritchard's counterclaim based on Paterson's failure to make those payments is a cause of action arising under the parties' contract.

## C.

Paterson argues the doctrine of accord and satisfaction and the doctrine of laches prohibit Pritchard from recovering the April and July 2020 invoices over two budget years later in retaliation for Paterson filing a lawsuit. It is unnecessary to address these claims, as Paterson fails to offer legal authority or meaningful analysis. R. 2:11-3(e)(1)(E).

Paterson further contends the counterclaim to enforce compliance with N.J.S.A. 18A:7F-9(e)(3) is an action in lieu of prerogative writ filed past the forty-five-day limitation period of Rule 4:69-6. Noting Paterson's failure to state the commencement date of the limitation period and lack of legal authority, Pritchard claims an action for money damages against a governmental entity is not a mandamus action.

A writ of mandamus is an order given to "a government official 'that commands the performance of a specific ministerial act or duty, or compels the exercise of a discretionary function, but does not seek to interfere with or control

the mode and manner of its exercise or to influence or direct a particular result.'" In re Council on Affordable Hous. by Murphy, 477 N.J. Super. 576, 591 (App. Div. 2024) (quoting Switz v. Middletown Twp., 23 N.J. 580, 598 (1957)). Mandamus provides a remedy for official inaction by ordering government officials to perform ministerial duties. Ibid.; Selobyt v. Keough-Dwyer Corr. Facility, 375 N.J. Super. 91, 96 (App. Div. 2005). Such actions must be commenced no later than forty-five days after the right to the relief claimed arises. R. 4:69-6. A ministerial duty is "the execution of a set task, and when the law which imposes it prescribes and defines the time, mode and occasion of its performance with such certainty that nothing remains for judgment or discretion." Ivy Hill Park Apartments v. N.J. Prop. Liab. Ins. Guar. Ass'n, 221 N.J. Super. 131, 140 (App. Div. 1987) (quoting Case v. Daniel C. McGuire, Inc., 53 N.J. Super. 494, 498 (Ch. Div. 1959)).

Here, Paterson focuses on Pritchard's counterclaim exceeding the forty-five-day statutory period without first explaining how Pritchard seeks mandamus relief based on its contractual counterclaim for monetary damages. Notably, N.J.S.A. 18A:7F-9(e)(3) requires school districts to pay their contractors as if they provided services, but this does not create or impose a ministerial duty on Paterson. Instead, Paterson's obligation to pay Pritchard

30

originates under the parties' contract, and therefore, Pritchard is not seeking to compel Paterson to perform a ministerial duty, subject to the limitation period of <u>Rule</u> 4:69-6.  Rather, it is seeking to enforce a contract.

### D.

Paterson argues that, under the contract, Pritchard had an obligation to perform services as a prerequisite to receiving payment, and Paterson had an obligation to pay Pritchard upon receiving proof it rendered services.  Paterson asserts it is not challenging the constitutionality of N.J.S.A. 18A:7F-9(e)(3), but rather for Pritchard to be successful on its counterclaims, the court would need to interpret the statute in a manner that violates the Contract Clauses in the United States and State Constitutions.  Thus, Paterson contends the trial court's interpretation of N.J.S.A. 18A:7F-9(e)(3) to excuse Pritchard's performance and require Paterson to make payments without a renegotiated contract authorizing payment for not working impaired the parties' contractual rights and obligations.

Pritchard, in turn, argues the statute was necessary to cope with the pandemic and cannot be intelligently read without giving effect to its plain language, which Paterson urges the court to ignore.  It notes that Paterson "cites to no law" in support of its argument and ignores the case law addressing this issue.

A-3079-22

The Contract Clause of the United States Constitution provides, "No State shall . . . pass any . . . Law impairing the Obligation of Contracts . . . ." U.S. Const. art. I, § 10, cl. 1. Similarly, in New Jersey, "The Legislature shall not pass any . . . law impairing the obligation of contracts . . . ." N.J. Const. art. IV, § 7, ¶ 3. "[D]espite the dissimilarity in language, [our Supreme] Court has recognized that the provisions of the federal and state constitutions provide 'parallel guarantees.'" Fid. Union Tr. Co. v. N.J. Highway Auth., 85 N.J. 277, 299 (1981) (quoting P. T. & L. Constr. Co. v. Comm'r, 60 N.J. 308, 313 (1972)). "Thus, . . . if the order and regulatory scheme under attack are valid under the federal contract clause, then they are necessarily valid under the parallel State provision." In re Recycling & Salvage Corp., 246 N.J. Super. 79, 100 (App. Div. 1991).

Moreover, courts have adhered to the well-established principle that "every possible presumption favors the validity of an act of the Legislature." Fid. Union Tr. Co., 85 N.J. at 300 n.13 (quoting N.J. Sports & Exposition Auth. v. McCrane, 61 N.J. 1, 8 (1972)). The party challenging the statute's constitutionality "bears the burden of establishing its unconstitutionality." State v. One 1990 Honda Accord, 154 N.J. 373, 377 (1998). Claims brought under either the federal or state Contract Clause are subject to a two-prong analysis:

32

determining first "whether a change in state law results in the substantial impairment of a contractual relationship and, if so, then . . . whether the impairment nevertheless is 'reasonable and necessary to serve an important public purpose.'" Berg v. Christie, 225 N.J. 245, 259 (2016) (quoting U.S. Tr. Co. of N.Y. v. N.J., 431 U.S. 1, 25 (1977)). "The first step in that analysis involves three inquiries: (1) whether a contractual right exists in the first instance; (2) whether a change in the law impairs that right; and (3) whether the defined impairment is substantial." Ibid.

In addition, this legislation was passed in the context of a global pandemic. Specifically, on April 14, 2020, amidst the pandemic, amendments to N.J.S.A. 18A:7F-9 were given immediate effect to require school districts to continue compensating their employees, contracted service providers, and other public entities.

We have noted, "a temporary restraint on private contracts may become necessary when the State is addressing 'a great public calamity.'" Kravitz v. Murphy, 468 N.J. Super. 592, 625 (App. Div. 2021) (quoting Home Bldg. & Loan Ass'n v. Blaisdell, 290 U.S. 398, 435-36 (1934)). An emergency condition may "justify flexible applications of constitutional restrictions in order to facilitate rather than obstruct governmental steps necessary to cope with the

emergency." Hutton Park Gardens v. Town Council of W. Orange, 68 N.J. 543, 566 (1975). "An emergency is an unusual public exigency calling for the exercise of the police power to alleviate the common peril or need; and the inquiry in all such cases is whether in right reason the public urgency sustains the remedy invoked." Jamouneau v. Harner, 16 N.J. 500, 514 (1954). "Every intendment is indulged in favor of the validity of the act. It is to be assumed that the act was directed to an exigency made manifest by experience, and the remedy was in accordance with the known need." Id. at 515-16. Thus, addressing any constitutional challenge must be viewed in light of the unanticipated pandemic and the Legislature's effort to deal with the severe economic hardship it imposed on contracted service providers.

Here, Paterson provided no discussion of this case law, analysis of the relevant factors, or the relative impact of the pandemic on the evaluation of these constitutional issues. Consequently, we decline to address this constitutional issue based on the insufficient briefing and record on this issue. An issue may be deemed waived if not properly briefed. See Pressler & Verniero, Current N.J. Court Rules, cmt. 5 on R. 2:6-2 (2017); see also Telebright Corp. v. Dir., Div. of Tax'n, 424 N.J. Super. 384, 393 (App. Div. 2012) (treating such a failure to brief an argument as a waiver); Gormley v. Wood-El, 422 N.J. Super. 426,

437 n.3 (App. Div. 2011), aff'd in part and rev'd in part, 218 N.J. 72 (2014); Zavodnick v. Lever, 340 N.J. Super. 94, 103 (App. Div. 2001) (noting that a party's failure to present any argument relating to a cross-appeal constituted an abandonment of that claim).

E.

Paterson alleges Pritchard's breach of contract counterclaim should be dismissed because Pritchard failed to establish a prima facie case. Establishing a breach of contract claim requires plaintiff to prove: "the parties entered into a contract, containing certain terms; plaintiffs performed what was required under the contract; defendant did not fulfill its obligation under the contract; and defendant's breach caused a loss to plaintiffs." Pollack v. Quick Quality Rests., Inc., 452 N.J. Super. 174, 188 (App. Div. 2017) (citing Globe Motor Co. v. Igdalev, 225 N.J. 469, 482 (2016)). "Each element must be proven by a preponderance of the evidence." Globe Motor Co., 225 N.J. at 482.

Regarding whether the parties entered into an enforceable contract, Pritchard's counterclaim asserts the parties entered into a contract in which Pritchard would provide custodial services, and Paterson would pay for those services. Paterson argues Pritchard did not provide work in April 2020, and thus, its counterclaim fails because it did not plead or identify a new

"renegotiated" contract obligating Paterson to pay Pritchard over $620,250.09 for not working. Similarly, Paterson also claims the parties did not have an enforceable contract because Pritchard's inability to perform failed to provide consideration for Paterson's payments. Paterson's conclusion rests upon the premise that "Pritchard did not renegotiate its 2019-2020 contract" and therefore could not receive payment without working and that N.J.S.A. 18A:7F-9(e)(3) cannot form the "pretext" for a breach of contract claim. (Emphasis added).

Pritchard asserted in its counterclaim that it was "ready and able to provide custodial services" from April through June 2020 but could not do so only due to the pandemic. It further claimed Paterson breached the contract by virtue of N.J.S.A. 18A:7F-9(e)(3) because Paterson was required to pay Pritchard's $620,250.09 April invoice and $77,141.40 July invoice but refused to do so.

Paterson, in turn, argues Pritchard did not establish that it performed custodial services as a condition of payment under the contract. Thus, Paterson asserts it did not have to pay Pritchard for the lack of services. Paterson further claims the court's order failed to articulate which of the three counts it granted in favor of Pritchard, but at the very least it could not have been based on a breach of contract because Pritchard failed to establish the requisite elements.

A-3079-22

We conclude the court did not err in granting Pritchard's motion for reconsideration and entering summary judgment in favor of Pritchard and against Paterson. Initially, we observe that although the court did not specify in its order the count on which it was granting Pritchard's motion, its written decision noted, "the present case is essentially one of breach of contract that requires the interpretation of N.J.S.A. 18A:7F-9(e)(3)." Accordingly, we are satisfied the court was addressing Pritchard's contract claim.

Contrary to Paterson's position, N.J.S.A. 18A:7F-9(e)(3) requires school districts to make payments "pursuant to the terms of a contract with a contracted service provider in effect on the date of the closure" as if the services had been provided. Although the statute also provides that "[a] school district shall make all reasonable efforts to renegotiate a contract in good faith," the school district's obligation to renegotiate does not obviate the requirement to make the payments set forth in the statute. In fact, N.J.S.A. 18A:7F-9(e)(3) requires that a school district "shall make all reasonable efforts to renegotiate a contract," but it further notes the renegotiation is "subject to this paragraph," which means the school district is still obligated to pay the contracted service provided "as if the services . . . had been provided." That is, under the statute, a school district's obligation to renegotiate a contract is not a prerequisite to its obligation to pay service

37

providers during school closures. Thus, the statute mandated Paterson to continue making payments to Pritchard pursuant to the terms of the 2019-2020 contract.

In effect, N.J.S.A. 18A:7F-9(e)(3) anticipates a declared public health emergency would prevent certain contracted service providers from performing services under a contract. Instead of rendering all service contracts void during the public-health-related school closures, the statute directs school districts and their service providers to proceed as if the services were performed, satisfying the service provider's contractual obligation.

Paterson ignores the plain text of N.J.S.A. 18A:7F-9(e)(3). The parties do not dispute that Pritchard did not perform custodial services in April through June 2020 because, "in line with the Governor's Executive Order[s]," Paterson informed Pritchard it was "immediately suspending all custodial services, District-wide as of . . . March 26, 2020." Nevertheless, when, as here, schools are closed longer than three days due to a declared public health emergency, N.J.S.A. 18A:7F-9(e)(3) instructs school districts to continue paying contracted service providers, under the presumption that the contracted "services . . . had been provided" and "school facilities had remained open." Accordingly,

A-3079-22

Paterson's refusal to pay the April and July 2020 invoices was a breach of the contract.

Finally, Paterson argues Pritchard did not suffer any contractual loss because the only losses it identified were those based on N.J.S.A. 18A:7F-9(e)(3). Here, Paterson misunderstands the nature of Pritchard's losses. Pritchard asserts losses based on Paterson's failure to pay the April and July 2020 invoices pursuant to the terms of the parties' contract and N.J.S.A. 18A:7F-9(e)(3). Specifically, Pritchard cannot counterclaim for these contractual losses without turning to N.J.S.A. 18A:7F-9(e)(3) as the means to enforce its contractual right to receive payment during the pandemic. Therefore, although the statute is implicated, Pritchard's alleged losses derive from the terms of the parties' contract.

Consequently, Paterson does not point to any issue of material fact as to any of the elements of the breach of contract counterclaim, which would have precluded the trial court from granting summary judgment in favor of Pritchard. Therefore, the court appropriately granted summary judgment on Pritchard's contract claim. Given our conclusion regarding Pritchard's contract claim, we need not address Paterson's arguments that the court erred in addressing

Pritchard's claims regarding unjust enrichment and "failure to follow a statutory obligation."

F.

Paterson argues the court erred in dismissing its claims prior to the discovery end date and making erroneous findings of fact and credibility determinations. Paterson further asserts it sustained a prima facie case for the counts pled in its complaint, and the parties disputed the amount of money owed in April and July 2020.

Paterson alleges the court's April 2023 order granting summary judgment for Pritchard occurred two-and-one-half months before the July 2023 discovery end date, which "unfairly prohibited [it] from prosecuting its case, and testing the credibility, veracity, and analysis of the alleged payroll document and [Pritchard]'s self-serving certification . . . [upon which] the court relied." In contrast, Pritchard argues any additional discovery would not have created a genuine issue of material fact, and, in any event, N.J.S.A. 18A:7F-9(e)(3) does not empower Paterson to police how Pritchard applies funds awarded under its contract.

Generally, summary judgment should not be granted until the plaintiff has "a reasonable opportunity for discovery." Auster v. Kinoian, 153 N.J. Super.

52, 56 (App. Div. 1977). Nevertheless, "[a] party opposing summary judgment on the ground that more discovery is needed must specify what further discovery is required, rather than simply asserting a generic contention that discovery is incomplete." Trinity Church v. Lawson-Bell, 394 N.J. Super. 159, 166 (App. Div. 2007). The challenging party "has an obligation to demonstrate with some degree of particularity the likelihood that further discovery will supply the missing elements of the cause of action." Auster, 153 N.J. Super. at 56. Therefore, "discovery need not be undertaken or completed if it will patently not change the outcome." Minoia v. Kushner, 365 N.J. Super. 304, 307 (App. Div. 2004).

Here, Paterson argues it was entitled to discovery to "test the veracity of [Pritchard's] self-serving, disputed claim[s]" and advances two theories of "factual issues" from its response to Pritchard's statement of material facts. Paterson believes discovery is necessary to test whether Pritchard's invoices were "fraudulent and deceitful" and whether Pritchard used the payments for "other unlawful purposes."[8] Paterson does not indicate how further discovery

---

[8] Paterson repeatedly argues that Pritchard produced fraudulent invoices for custodial services that it admits were never done. However, Pritchard does not contend that it performed the services at issue in this litigation. Rather, Pritchard relies on N.J.S.A. 18A:7F-9(e)(3), which was triggered during the pandemic and

41

would show the invoices were fraudulent or deceitful. Moreover, N.J.S.A. 18A:7F-9(e)(3) provides, "[p]ayments received by a contracted service provider . . . shall be used to meet the payroll and fixed costs obligations of the contracted service provider, and employees of the contracted service provider shall be paid as if the school facilities had remained open and in full operation." As the trial court stated, "it [is not] Paterson's responsibility to determine if [Pritchard is] using funds for payroll and fixed costs obligations under the statute." Indeed, the statute does not grant school districts the authority to ensure that contracted service providers apply the payments lawfully but rather merely directs where school districts must make the payments. Thus, even if Pritchard failed to comply with the statute and used the funds for "other unlawful purposes," it would not create a cause of action that Paterson could pursue.

Paterson also asserts the court erred in making credibility determinations as to the Martin certification regarding Pritchard's use of the funds received from Paterson to pay its employees for the months of May and June 2020 and in dismissing its claim that Pritchard committed conversion and civil theft "when

---

specifically provides that school board shall continue to make payments "as if the school facilities . . . remained open." For the same reasons, this court is unpersuaded by Paterson's arguments that there was no consideration based on Pritchard's failure to perform.

it violated [N.J.S.A. 18A:7F-9(e)(3)] by using public taxpayer dollars for private profit." Pritchard, in turn, argues that Paterson does not identify any issues of fact and that the statute does not authorize Paterson to ensure that Pritchard complies with its statutory obligations. We affirm the trial court on this issue for the same reason noted above because N.J.S.A. 18A:7F-9(e)(3) does not authorize Paterson to ensure that Pritchard complies with its statutory obligations. Instead, it merely imposes an obligation on Paterson to pay Pritchard as if it provided custodial services and obligated Pritchard to use those payments to meet payroll and other fixed obligations and pay its employees. Ibid. Pritchard's employees, not Paterson, would potentially have a claim against Pritchard if the funds it received from Paterson were not paid out in accordance with N.J.S.A. 18A:7F-9(e)(3).

Paterson also claims it was entitled to "check the veracity" of Pritchard's claims that it could not provide a listing of the hours worked by its employees because they were not working during the COVID-19 shutdown. Again, Paterson does not specify how further discovery could reveal an issue of material fact. The parties do not dispute that their contract required Pritchard to produce certified payroll before payment. Notably, on March 25, 2020, Paterson's Operations Officer of Facilities Maintenance and Custodial Services informed

43

Pritchard that it was "immediately suspending all custodial services, District-wide" due to the "unprecedented crisis" and asked Pritchard to "have the next pay application reflect services rendered up to . . . March 25, 2020." Because the parties also do not dispute the school closures prevented Pritchard from performing services from April to early July 2020, it is unclear how Paterson believes further discovery would provide any further payroll information for the period during which Pritchard's employees did not work. Given Paterson failed to identify that additional discovery may create a genuine issue of material fact, the trial court properly granted summary judgment for Pritchard.[9]

We are likewise unpersuaded by Paterson's various contract-related claims and its assertion that Pritchard breached the contract by submitting invoices for April, May, and June 2020 without performing custodial services while schools were closed. The trial court correctly described the present case

---

[9] Paterson also refers us to its briefs before the trial court and "incorporates by reference" "for the sake of brevity" various other arguments. Paterson was already given permission to file an overlength brief, and the inclusion by reference of various other arguments appears to be an attempt to avoid the page limit on appellate briefs. See R. 2:6-7. We perceive plaintiff's failure to more directly and properly address those points by way of its appellate brief, and instead merely referring us to the trial brief, as abandonment of those claims. See Drinker Biddle & Reath, LLP v. N.J. Dep't of L. & Pub. Safety, 421 N.J. Super. 489, 496 n.5 (App. Div. 2011).

as "essentially one of breach of contract that requires the interpretation of N.J.S.A. 18A:7F-9(e)(3)." The parties' contract stated Paterson's obligation to pay Pritchard is contingent upon Pritchard performing services and providing payroll documentation. Pritchard and Paterson do not dispute that Pritchard could not perform services from April through July 2020 due to the pandemic.

As set forth above, N.J.S.A. 18A:7F-9(e)(3) requires Paterson to pay Pritchard as if Pritchard performed custodial services under the contract and as if schools had remained open. It also provides that nothing "shall be construed to require a school district to make payments to a party in material breach of a contract with a contracted service provider if the breach was not due to a closure resulting from a . . . declared public health emergency . . . ." N.J.S.A. 18A:7F-9(e)(3) (emphasis added). That is, a school district is not obligated to make payments if a contracted service provider materially breached the contract, and a public-health-related school closure did not cause that breach.

Here, Paterson closed its schools due to the pandemic, preventing Pritchard from providing custodial services and payroll documentation. However, the statute triggers Paterson's obligation to pay Pritchard pursuant to the terms of the contract. Notably, N.J.S.A. 18A:7F-9(e)(3) provides Pritchard may seek payment from Paterson due to the pandemic but does not grant

Paterson authority to use Pritchard's inability to perform as an excuse not to make payments because the public-health-related school closures caused Pritchard's non-performance. Thus, Paterson cannot argue Pritchard breached the contract or violated the implied covenant of good faith and fair dealing by not rendering custodial services.

Likewise, although the parties' contract required Pritchard to produce certified payroll, Pritchard's failure to do so is not a justification for Paterson to withhold payment under N.J.S.A. 18A:7F-9(e)(f) because Paterson's obligation to pay Pritchard would be discharged only if Pritchard's material breach of the contract did not result from the school closure. Given Pritchard did not have a certified payroll to provide due to its inability to work during the pandemic, the lack of payroll was not a material breach of the contract. Therefore, Paterson's claims for Pritchard's breach of contract or violation of the implied covenant of good faith and fair dealing were properly dismissed.

G.

Paterson asserts the effective date of N.J.S.A. 18A:7F-9(e)(3) is June 29, 2020, and thus, the statute should be applied prospectively to negate Pritchard's claims for payment of the April, May, and June 2020 invoices. Paterson ignores that the original legislation became effective at least as of April 14, 2020, when

it was enacted.  The original statute did not become unenforceable when it was amended on June 29, 2020.  Rather, the amendment only clarified that "employees of the contracted service provider shall be paid as if the school facilities had remained open and in full operation."  Pritchard was already required under the original version to use the funds to "meet the payroll." Accordingly, Paterson's argument that the statute should only be effective as of June 29, 2020, is unpersuasive because it had an obligation to pay the invoices since at least April 14, 2020.

Nevertheless, the trial court retroactively applied N.J.S.A. 18A:7F-9(e)(3) in awarding Pritchard payment from April 1 rather than from the April 14 enactment date.  Indeed, Paterson argues in the alternative that the statute should be applied prospectively from the April 14, 2020 date to reduce Pritchard's claim for the $620,250.09 April invoice by at least half because the Legislature did not expressly or impliedly intend for retroactive application of the statute. Pritchard counters that although the Legislature never expressly addressed retroactive application of the statute, it is implied based on the pandemic and legislative intent.

The general rule that newly enacted statutes are applied prospectively "is not to be applied mechanistically to every case."  Johnson v. Roselle EZ Quick

LLC, 226 N.J. 370, 387 (2016) (quoting Gibbons v. Gibbons, 86 N.J. 515, 522 (1981)).  Courts must interpret the statute with the overriding goal of determining the Legislature's intent.  Id. at 386-87.  If the plain language of the statute leads to an ambiguous result, "[courts] turn to extrinsic evidence, such as legislative history."  Id. at 386.

Courts must ask two questions to determine whether a statute should be retroactively applied:  (1) "whether the Legislature intended to give the statute retroactive application," and (2) "whether retroactive application is an unconstitutional interference with 'vested rights' or will result in a 'manifest injustice.'"  Twiss v. State, Dep't of Treasury, 124 N.J. 461, 467 (1991) (first quoting State, Dep't of Env't Prot. v. Ventron Corp., 94 N.J. 473, 499 (1983); and then quoting Gibbons, 86 N.J. at 523).  Regarding the first inquiry, legislative intent for retroactivity can be demonstrated when:  (1) the Legislature expressly or implicitly intended the statute be applied retroactively; (2) an amendment is curative; or (3) "the reasonable expectations of those affected by the statute warrant such application."  Ibid.  Courts will only give a statute retroactive effect if one of these grounds is present.  Johnson, 226 N.J. at 387.

Here, the court did not directly analyze whether the statute should be applied prospectively, as of April 14, or retroactively.  Because the court did not

address this retroactive issue, we decline to do so in the first instance and remand for the court to address this question. See Ins. Co. of N. Am. v. Gov't Emps. Ins. Co., 162 N.J. Super. 528, 537 (App. Div. 1978). To the extent the court determines the statute should be applied prospectively, as of April 14, it shall recalculate the damages award consistent with that decision. Our remand order shall not be construed as an expression of an opinion on the merits of this issue.

Finally, to the extent we have not otherwise addressed any of plaintiff's other arguments, we determine they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed in part, remanded in part. We do not retain jurisdiction.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-3079-22